## IRA DAVIS v. THE ESTATE OF CATY BURNHAM.

*Wife's incapacity to contract. Heirs to her personal estate.*

The wife is not bound by any contract she may make, even with her husband's consent, during her coverture, unless she be living as a *feme sole*, and her husband be *civiliter mortuus*. And her estate is not liable, upon her contract, for services performed in pur-suance of it, on account of said estate being pecuniarily benefited by those services.

The plaintiff agreed with the intestate, when a *feme covert*, to apply for a pension for her on account of the revolutionary services of her father for which he was to receive a speci-fied compensation if he succeeded; the pension was obtained and paid to her administra-

tor soon after her decease. *Held*, that he could not recover against her estate, either the compensation agreed upon, or for his services upon a *quantum meruit.*

Under our statute of distributions, the children of a deceased *feme covert* inherit her personal property as well as her real estate.

APPEAL from the decision and report of the commissioners upon the estate of Caty Burnham, allowing a claim of $218.56, in favor of the appellee, against said estate. The appeal was taken by Ambrose H. Thayer and Hannah Waterman, who described themselves as children and heirs at law of the said Caty Burnham. The appellee moved to dismiss the appeal, for the reason that the said Thayer and Waterman were not creditors, devisees, legatees or heirs of the said Caty Burnham, or of her estate. It appeared that the appellants were neither devisees, legatees or creditors, but that they were the children of the said Caty, by her first husband, Abraham Thayer, and that her second husband, Asahel Burnham, survived her and was still living, and that he claimed the assets in the hands of her administrator. Upon these facts the county court, January Term, 1851,—COLLAMER, J., presiding,—overruled the motion to dismiss, to which the appellee excepted.

The appellee filed a declaration on book account against the estate of the said Caty Burnham, and from the report of the auditor, the following facts appeared in addition to those above stated. In 1847, the said Caty and her husband, Asahel Burnham, applied to the appellee to procure a pension for her, from the United States, on account of the revolutionary services of her father, and offered him two-thirds of whatever he might obtain, if he would undertake the service, and receive nothing in case he did not succeed. This offer was accepted, and the appellee spent much time in petitioning the pension department at Washington, and in journeying to various places in Massachusetts, to procure the necessary testimony in support of the application; and in so doing he made expenditures and disbursements to the amount of nearly $300.00, and on the 5th of May, 1849, he succeeded in obtaining a certificate of pension in her favor for $327.84, which was forwarded to and received by him, soon after the death of the said Caty. There was no estate or funds of the said Caty to be administered upon, except the money obtained upon said pension certificate. The appellee's claim was for $218.56, being two thirds of said sum of $327.84, as agreed,

with the interest thereon, from April 1st, 1850. The auditor found that the sum claimed was due to the appellee, if, upon the foregoing facts he was entitled to recover either upon the special agreement, or upon a *quantum meruit.*

The county court, June Term, 1853,—COLLAMER, J., presiding, —rendered judgment, upon the auditor's report, for the appellants. Exceptions by the appellee.

*Washburn & Marsh,* for the appellee.

1. By the ancient common law, the husband took all the wife's personal chattels, whether he survived her or not, and whether reduced to possession or not, but not debts due to her by obligation or contract, unless he reduced them to possession during the coverture. Co. Lit. 351, *b.,* and administration belonged to the clergy, who could not be compelled to distribute.

By the statute, 31 Edw. 3, 11, the bishop was to appoint *administrators* who were to be the *next friends* of the deceased. 1 Com. Dig. 371, (B. 6.) Keb. 136. By the statute, 21 Hen. 8. 5, administration was to be granted to the *widow or next of kin.* Keb. Stat. 370. So by the statute of this state. Comp. Stat. 336, § 4. Under these statutes the administrator was not compelled to distribute, and the construction was, to give administration of a deceased wife to the husband, and to allow the husband to retain the estate, after payment of the debts. Moor. 151. Holt. 83, 191. 2 Bl. Com. 515. WILLIAMS, CH. J., in *Hall* v. *Huntoon,* 17 Vt. 251. And the ordinary could not elect, but must grant administration to the husband. *Sharp* v. *Port,* cited in Ognel's case, 4 Co. 51, *b.* (decided 29 Eliz.) *Fawtry* v. *Fawtry,* 1 Salk. 36.

Then to compel distribution, the statute 22–23, Car. 2, was enacted. Keb. Stat. 1424. And this is nearly identical with the statute of distributions of this state. And inasmuch as doubts arose, as to the construction of this statute, the statute 29 Car. 2, Ch. 3, § 25, (Keb. Stat. 1480,) was enacted as explanatory of this statute, of 22–23 Car. 2 ; and this statute, (29 Car. 2,) introduced no new law, and gave no new rights, but, declared the law still to exist, as it had previously. This is shown by the words of the statute. Keb. 1480. 1 Com. Dig. 361. 2 Kent, 135, n. (c.) 2 Black. Com. 515.

The statutes 31 Edw. 3, and 21 Hen. 8. being enacted previous to the emigration of the colonists to this country, are here a part of the common law, unless inapplicable to our situation or repugnant to other rights and privileges. PARSONS, J., in *Commonwealth* v. *Knowlton*, 2 Mass. 534. STORY J., in *Pawlet* v. *Clark et al.*, 9 Cranch. 292. [3 U. S. Cond. R. 420.] 1 Kent, 472–3. Stat. of Vt. of 1787. [Hasw. Stat. 28.].

There being no special statute of this state upon this subject, the law of this state is the same that the law of England was previous to the statute 22–23 Car. 2, and subsequent to that statute, as explained by the statute 29 Car. 2. And that is, that the husband takes the wife's personals in possession, by virtue of the marriage, and holds them after the decease of the wife discharged of all claims for the payment of her debts, *dum sola.* 1 P. Wms. 468. 3 P. Wms. 400, 412. Reeve's Dom. Rel. 1. And as to her *choses in action* and chattels real and mixed, he is entitled to administration, takes them charged with her debts, and holds them as absolutely his property, after payment of her debts. Bing. on Cov. 202, (g.) *Ib.* 208, (a.) *Ib.* 209–210, *Ib.* 210, (1.) *Ib.* 212. *Ib.* 213, 214, and notes (2.) (1.) *Whitaker* v. *Whitaker*, 6 Johns. 112, 117. *Tayman* v. *Hopkins*, 4 M. & Gr. 389, [4 E. C. L. 205, 210.] *Danforth* v. *Woodward*, 10 Pick. 433. *Cary* v. *Taylor*, 1 Eq. Cases Abr. 69, pl. 10. *Commonwealth* v. *Manley*, 12 Pick. 173. 2 Kent, 135 & n. (e.)

And although the husband do not take out administration, but it is taken by another, he takes as trustee for the husband; and this was so held in *Cart* v. *Rees*, 1 P. Wms. 381, the reason given being that the estate vests in the husband, as *next of kin* to the wife. If the husband be *next of kin* to the wife as to the whole estate which remains to be administered upon, no other person's rights can be affected by a diminution of the estate, and hence no other person can appeal.

This matter is properly brought to the notice of the court by the motion to dismiss, which should have prevailed.

2. The contract with the plaintiff was made by Caty Burnham, in conjunction with her husband, Asahel Burnham; it was not a contract affecting any estate, *then existing*, but a beneficial arrange-

ment whereby an estate might or might not be created for her, and on such terms as could in no way injuriously affect her.

The plaintiff was made an agent by Caty Burnham, with the consent of her husband, to look up and ferret out a claim, not then *in esse ;* if successful, he had a *prior* claim upon two-thirds the amount received ; the remaining one-third would belong to Caty Burnham. Previous to the amount being received, Mrs. Burnham dies, but not until the plaintiff had incurred expenses in endeavoring to procure the same, to an amount in money, exceeding the sum found his due, by the auditor. Now, the whole amount received having gone into the hands of her administrator, has not the plaintiff an equitable and legal claim upon her estate, for the amount found his due by the auditor, proceeding from a contract made with her, with her husband concurring and assenting thereto ?

The pension money, which was the subject matter of the contract with the plaintiff, was the personal estate of the wife, and as such, she had the right to dispose of the same, or make any contracts or agreements in respect to it, that she might desire to, and the assent of the husband to any such contract or agreement is conclusive upon him. 2 Story's Eq. Juris. 614–17, § 1388–91.

*Peck & Colby* and *A. Howard*, for the appellants.

The contract gave no right of action against Mrs. Burham. Her husband was bound, as he was a party to it, and it can only be enforced against him. If it could not be enforced against her, it cannot be enforced against her estate. To permit a recovery against the estate would violate all the settled principles of law. If a contract of this character can be enforced in one case against a *feme covert* it may be in any other. The plaintiff's remedy is against the husband. *Robinson* v. *Reynolds et al.* 1 Aik. 174. *Marshall* v. *Rutton*, 8 Term. 545, *Clayton* v. *Adams*, 6 Term. 604. Reeves Dom. Relations, 170 and note. *Murray* v. *Bailey*, 3 Mylne & Keene, 209.

2. Even in chancery, the fund could not be reached on the ground on which that court sometimes proceeds to enforce the payment of claims from the separate property of the wife, by which is meant that to which the husband has released all claim by some ante-nuptial settlement. The remedy is not allowed against her

other property. The fund in question was in no sense her separate property. 2 Story Eq. 624–5, § 397 and note.

3. The plaintiff has a plain remedy against the husband. If there is any remedy against the fund, it must be on the ground that a lien may be implied from the contract. But no lien upon a pension fund can be created in favor of a third person by contract or otherwise. All such liens are declared to be void by various acts of congress. The intestate's claim to a pension is founded on the second section of the act of congress of July 4th, 1836. The fourth section expressly declares all liens void. The second section of the act of July 7, 1838, not only declares void all liens, but provides that the pension shall not be attached at law or in equity *Foot* v. *Knowles*, 4 Met. 386.

4. The case finds that the appellants are the children and heirs at law of Caty Burnham. A right of appeal is given them by sec. 27, of chap. 52 Comp. Stat.

The opinion of the court was delivered by

REDFIELD, CH. J. I. The claim, upon its merits, is certainly very peculiar. The finding of the auditor leaves no ground of doubt, that the plaintiff was fairly and fully entitled to two-thirds of the amount of the pension money drawn. But can he obtain an allowance against the estate, for it. If he can, it must be upon one of two grounds, either the retainer by husband and wife, during the coverture, to perform service for the benefit of the wife and in collecting her debts, or else, that after the service was performed, and the money realized, the administrator took the advantage of the service, and mingled the money with those of the estate.

These grounds, are neither of them quite as satisfactory as could be wished. This was a contract made, in law, with the husband, and for the performance of service which was expected to enure to his benefit, that is the reduction of the wife's choses to possession. There could be no doubt of the liability of the husband, but was the wife also liable, and did that liability attach to her estate? If the money had actually been received by the plaintiff, before the decease of the wife, her right would thereby have been determined. *Hill* v. *Royce*, 17 Vt. 190.

I take it there is no dispute the wife cannot bind herself, even

by her husband's consent, to any contract, made during coverture. She is altogether incapable of contracting, on her own account, unless she live as a *feme sole*, and the husband be *civiliter mortuus*. Her legal existence is completely merged in that of her husband. It seems impossible then to bind her by the contract. If bound at all, it must be, by the beneficial service, and here it seems to me it is rather for the benefit of the husband. The money, if it could be realized during the life of the wife would vest absolutely in the husband; and this was the consummation looked to in the transaction. This was the object for which the plaintiff was employed, the end towards which he looked, and this was the consideration, on his part, for the compensation. It is true, that by the accident of the wife's death, before the money was realized, it resulted in putting one third of the money into her estate. The other two-thirds never belonged to the estate, and the administrator could not be compelled, probably, to account for the two-thirds unless he has made himself liable to do so, by inventorying the whole, which, if done under a misapprehension ought not to prejudice his right, and thus make him liable twice over.

But will the receipt of this money by the administrator and putting it into the mass of the estate, be such an adoption of plaintiff's service as to give a cause of action against the intestate? This, to have this effect, should have existed during her life time, as it seems to us. Her death determined her power to contract, and the coverture merged it before. It seems impossible, under the state of the case, to make out any legal cause of action against the deceased, and that is the inquiry.

The United States statute seems to only apply to the heirs of the pensioner, and not extend to the heirs of such heirs. At all events this part of the inquiry is unimportant. We regard this as strictly a proceeding at law, and that to charge the estate, a contract express or implied, must be shown, which seems to us impossible to be made out of the facts reported. How far the plaintiff may have some other remedy, either in law or equity, against the fund, or some other party, is not needful to be inquired into here.

II. The statute in terms, gives the right of appeal " to any creditor devisee, legatee, or heir," where the executor or administrator

declines taking it. The statute of distributions in this state provides that personal estate shall be distributed, in the same manner as real estate is inherited. And it is generally enacted that children shall inherit the real estate of every deceased person. We cannot comprehend then, why personal estate must not equally go to one's children, with real estate. And in regard to the latter, no question was ever made. And there is no more reason, for incorporating an exception into the statute of distributions of personal estate, as to *femes covert,* than in regard to real estate. And if this allowance stands, it will bind all the estate, both real and personal, which may hereafter come to the hands of the administrator. The motion to dismiss was correctly overruled.

Judgment affirmed.